UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

CHARLES A. BENSON,                      )
                                        )
                  Petitioner,           )
                                        )
        v.                              )    No. 1:24-cv-01373-SEB-TAB
                                        )
TRENT ALLEN,                            )
                                        )
                  Respondent.           )

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Charles Benson's petition for a writ of habeas corpus seeks relief from his conviction and sanctions in prison disciplinary case ISR 24-04-0960. For the following reasons, his petition is **denied**, and this action is **dismissed with prejudice**.

**I. Overview**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

## II. The Disciplinary Proceeding

On April 12, 2024, at the Pendleton Correctional Facility, Officer S. Shepherd wrote a conduct report, stating:

> On 4/12/24, At approximately 3:30 PM I (S.Shepherd) was in K6 dormitory checking in with the Program Participants. I approached I.I. Charles Benson (#202702) near the day room area in K6 dormitory and notified him that I saw his curtain yesterday April 11th so he will be receiving paperwork shortly in regards to it. I.I Charles Benson stated "Oh you want to play games, okay I see how it is" and he walked away from me. I continued to walk through K6 Dormitory and I.I. Charles Benson approached me a few mintues later while I was near the Officer Bubble area in K6 dormitory and he seemed angry and he stated, "I know where you are from and I take this shit seriously so just know that". I stated "okay, that is fine". I.I Charles Benson then stated, "I feel like you are harassing me because you made a note in my file before and I know that for a fact because I saw the note and now you are on bullshit again. Don't worry though I know some things about you and since you want to do the most I will do the most too." I then left K6 Dormitory.

Dkt. 10-1 (errors in original).

Mr. Benson was charged with threatening Officer Shepherd, a violation of offense B-213. *Id.* Staff screened Mr. Benson on May 23, informing him in writing of his rights. Dkt. 10-3. He pleaded not guilty and requested Officer Goins as a witness to say what Goins heard, and asked for the reporting officer so he could ask what happened to the "curtain write-up." *Id.* Officer Goins provided a witness statement saying, "I, officer Goins was working upper K-dorm, when I seen I.I. Charles Benson standing at the gate of K6 and I heard I.I. Charles Benson ask (S.Shepherd) where you from? S. Shepherd responded 'don't worry about.' That's all I heard." Dkt. 10-6 (errors in original).

A disciplinary hearing officer (DHO) conducted the hearing on May 30. Dkt. 10-4. In the space on the hearing report for Mr. Benson's statement, the DHO wrote, "Refused hearing. Got angry at other hearing and told me to go away." *Id.* The DHO found Mr. Benson guilty, stating, "Ofc. Goins did not hear the whole conversation. I/I Benson refused to participate in his hearing

and tell his side so I had to rely on staff report." *Id.* He imposed a one-step demotion in time-earning class and other non-grievous sanctions. *Id.*

Mr. Benson's appeals were denied. This habeas action followed.

### III. Discussion

Mr. Benson claims that he was 1) denied the right to be present and heard at his hearing; and 2) he was denied an impartial decision-maker. Dkt. 1 at 3-5.

### A.  Right to Be Present

Mr. Benson argues that after the hearing began, he and the DHO "had a disagreement and when he was having me sign the disciplinary hearing report he just walks off."  Dkt. 1 at 3. Mr. Benson contends that he "did not see any of the requested evidence/staff witness statements." *Id.* The DHO reported that Mr. Benson "got angry" and "told me to go away." Dkt. 10-4. Although they present different views of exactly what transpired, both agree that the hearing began but that at a certain point, the DHO left without Mr. Benson signing the hearing report.

As noted above, petitioners have a limited opportunity to call witnesses and present evidence to an impartial decision-maker. *Hill*, 472 U.S. at 454. At screening, Mr. Benson requested that Officer Goins report what he heard Mr. Benson say. Dkt. 10-3. Officer Goins provided a statement saying he only heard Mr. Benson ask Officer Shepherd, the reporting officer, where she was from. Dkt. 10-6. The DHO considered this statement and determined that Officer Goins did not hear the entire conversation between Mr. Benson and Officer Shepherd. Mr. Benson was not denied this evidence.

Mr. Benson had also wanted to ask the reporting officer what happened to the conduct report about his curtain. Dkt. 10-3. Whether or not there was a separate report charging Mr. Benson with having a curtain over his window is not relevant to the issue of whether Mr. Benson threatened

Officer Shepherd. If Mr. Benson was denied a response to his question about the other write up, it had no bearing on this case and therefore did not violate due process. *See Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011) (if the inability to present testimony did not prejudice the petitioner, any conceivable error was harmless).

Petitioners "must be allowed to present *relevant* evidence, including witness testimony, unless it is cumulative or unduly threatens the security of the facility." *Ellison v. Zatecky*, 820 F.3d 271, 274 (7th Cir. 2016) (emphasis added). The Court need not resolve exactly what happened during the hearing on May 30, 2024, *i.e.*, whether Mr. Benson "refused" the hearing, because he admits that there was a "disagreement," and he was not denied any relevant evidence.

## B. Impartial Decisionmaker

In a related claim, Mr. Benson argues that the DHO was not impartial when he falsely wrote "refused hearing" on the report. Dkt. 2 at 5. He also contends that Officer Carson should not have signed the hearing report because she was not present when the DHO was at his cell. *Id.*

Hearing officers "are entitled to a presumption of honesty and integrity" absent clear evidence to the contrary. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003); *Perotti v. Marberry*, 355 F. App'x 39, 43 (7th Cir. 2009) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). Indeed, "the constitutional standard for impermissible bias is high," and hearing officers "are not deemed biased simply because they presided over a prisoner's previous disciplinary proceeding" or because they are employed by the IDOC. *Piggie*, 342 F.3d at 666. Instead, hearing officers are impermissibly biased when, for example, they are "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof." *Id.* at 667. Another possible example of bias is if the DHO were found to have an intimate relationship with a crucial witness in the case. *See Eads vs. Hanks*, 280 F.3d 728, 729 (7th Cir. 2002). None of those circumstances

5

are alleged here. Mr. Benson does not allege that the DHO was involved in the incident or the investigation thereof, nor that he had an inappropriate relationship with a witness. Mr. Benson's complaints about how the DHO handled the hearing or who witnessed the form do not constitute clear evidence of bias. The presumption that the DHO was not biased prevails.

## IV.  Conclusion

Mr. Benson does not deny that he told the reporting officer that he "know[s] stuff" and knows where she was from. Dkt. 11 at 4. This alone constitutes a threat. For the reasons discussed above, there were no due process violations in these proceedings.

There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Benson to the relief he seeks. Accordingly, Mr. Benson's petition for a writ of habeas corpus must be **denied** and the action **dismissed with prejudice.** Judgment consistent with this Order shall now issue.

**IT IS SO ORDERED.**

Date:  5/18/2026

_SARAH EVANS BARKER, JUDGE_
United States District Court
Southern District of Indiana

Distribution:

CHARLES A. BENSON
202702
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

David A. Arthur
INDIANA ATTORNEY GENERAL
David.Arthur@atg.in.gov